UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ANTHONY WOODS,

        Plaintiff,                      Case No. 2:12-cv-256

v.                                                Honorable Gordon J. Quist

DANIEL HEYNS, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without payment of an initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Anthony Woods, an inmate at the Alger Maximum Correctional Facility (LMF), filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Daniel Heyns, Warden Mitch Perry, and Deputy Warden Unknown Horton. Plaintiff alleges that he is serving a life sentence, has been incarcerated for over 30 years, and has

aging parents. Plaintiff states that approximately two years ago, while he was confined at the Newberry Correctional Facility (NCF), he was found guilty of substance abuse (alcohol). Plaintiff asserts that the test used to determine that the substance was alcohol was the "smell test." This test requires that a staff member with a rank higher than Resident Unit Officer who happens to be in the Control Center smell the substance and determine whether it smells like alcohol. MDOC policy directive 03.03.115, ¶ JJ states:

> JJ.   Prisoners who test positive for an unauthorized controlled substance or for alcohol shall be charged with a major misconduct for substance abuse only if confirmed positive using a scientifically accepted test methodology. However, a prisoner may be charged with major misconduct for an unconfirmed test for alcohol (e.g., PBT) if there is other evidence indicating alcohol use (e.g., slurred speech; bloodshot eyes).

Plaintiff states that the smell test is not a scientifically accepted methodology for testing the liquid and violates MDOC policy. Plaintiff was found guilty of several misconducts for possessing alcohol based on the "smell test," and asserts that he did not demonstrate any other evidence of alcohol use, such as slurred speech or bloodshot eyes. As a result of Plaintiff's misconduct convictions, Plaintiff's was placed on an indefinite visitation restriction. Plaintiff asserts that the continuation of this restriction may prevent him from seeing his parents during their lifetime.

Plaintiff claims that the indefinite visitor restriction violates his rights under the Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## Discussion

### I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Liberally construing Plaintiff's complaint, he appears to be claiming that the ban on visitation violates his rights under the First Amendment. With regard to non-religious First Amendment associational rights, the Supreme Court has said:

> First Amendment associational rights...likewise must give way to the reasonable considerations of penal management. As already noted, numerous associational rights are necessarily curtailed by the realities of confinement. They may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations, whether through group meetings or otherwise, possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment.

*Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132 (1977).

Plaintiff's visits were restricted pursuant to MDOC policy following the discovery of a liquid substance in an open setting which was in Plaintiff's area of control. The liquid was determined to be alcohol pursuant to the "smell test." MDOC Policy provides that if found guilty of two or more major misconducts for substance abuse, a prisoner may have his/her visiting privileges permanently restricted by the Director as provided for in PD 05.03.140. *See* Policy Directive 03.03.115, ¶ KK. Policy Directive 05.03.140 states that the Director may restrict all of a prisoner's visits if the prisoner is convicted or found guilty of two or more violations of the major misconduct charge of substance abuse for behavior that occurred on or after January 1, 2007, which do not arise from the same incident. This includes failure to submit to substance abuse testing. *See* Policy Directive 05.03.140, ¶ XX (4). Finally, the Director may remove a restriction upon written request of the Warden or the restricted prisoner if it has been least six months after imposition of the restriction by the Director if it is based on two or more violations of the major misconduct charge of substance abuse and the charges were for possession or use of an alcoholic beverage; however, if the prisoner was found guilty of another major misconduct for substance abuse or a non-bondable major misconduct during the period of time his/her visits were restricted by the Director,

the restriction shall not be considered for removal until the prisoner has been free of such misconduct for a six month period. See Policy Directive 05.03.140, ¶ BBB (3).

It is clear that the purpose of the policy in this case is to prevent prisoners from receiving contraband items smuggled in by visitors and to encourage prisoners to engage in positive behavior by rewarding them with visits. The Court concludes that this ban is reasonably related to the legitimate penological objective of prison security.

The Supreme Court upheld an MDOC visitation ban for inmates with substance abuse violations in *Overton v. Bazzetta*, 539 U.S. 126 (2003). The Court did state that evidence of a "de facto" ban on an inmate might lead to a different result. *Id*. at 172. Pursuant to MDOC policy, Plaintiff was able to reapply for visits following a six month period, and he can continue to reapply in the future. Given that fact, and given the potential seriousness of prisoners possessing and using alcohol, the Court concludes that a "de facto" ban has not been placed on Plaintiff. Therefore, Plaintiff has not shown a First Amendment violation.

In addition, Plaintiff asserts that the failure to use a scientifically accepted test for determining whether the liquid was alcohol violates MDOC policy and, consequently, his due process rights. Plaintiff has alleged that he did not receive procedures created by the State of Michigan. No due process interest can be derived from a statute or regulation that merely establishes procedural requirements. *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Bills v. Henderson*, 631 F.2d 1287, 1297-99 (6th Cir. 1980). In addition, the procedural due process mandated by the Constitution cannot be altered by or defined by, and therefore is not necessarily the same as, the procedures required by state law. *See Vitek v. Jones*, 445 U.S. 480, 490-91 (1980). Thus, so long as the Plaintiff received that process which was due under the Constitution, the fact that the State may have failed to comply with its own procedure does not state a cause of action under 42 U.S.C. § 1983. *Id.*; *see also Walker v. Mintzes*, 771 F.2d 920, 933-934 (6th Cir. 1985).

It is clear from the face of his complaint that if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). In this case, Plaintiff received a hearing on his misconducts and was found guilty by a hearing officer. Therefore, Plaintiff's due process claim is properly dismissed.

Finally, with regard to Plaintiff's Eighth Amendment claim, the United States Supreme Court has held that the restriction on visitation for inmates with two substance abuse violations did not constitute cruel and unusual punishment in violation of the Eighth Amendment. *Overton*, 539 U.S. at 136-137.

> Michigan, like many other States, uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline. This is not a dramatic departure from accepted standards for conditions of confinement. Cf. *Sandin v. Conner,* 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Nor does the regulation create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to

> the risk that it might occur. See, *e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

*Id.* at 137. Therefore, Plaintiff's Eighth Amendment claim is properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: December 5, 2012         /s/ Gordon J. Quist
                                                         GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE